IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| JANICE TEHIE<br>1341 Valley Home Road<br>Morristown, TN 37813 | :<br>:<br>:<br>: | CIVIL ACTION NO. _____ |
| Plaintiff, | :<br>: | **JURY TRIAL DEMANDED** |
| v. | :<br>: | |
| CHILDREN'S LITERACY INITIATIVE<br>2314 Market Street, 3rd Floor<br>Philadelphia, PA 19103 | :<br>:<br>:<br>: | |
| Defendant. | : | |

---

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Janice Tehie ("Plaintiff"), hereby brings this action against Defendant Children's Literacy Initiative ("Defendant") and alleges, upon personal belief as to her own acts, and upon information and belief as to the acts of others, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this Complaint on behalf of herself and others similarly situated contending that Defendant has improperly failed to pay overtime compensation to its Early Literacy Specialists pursuant to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100 *et seq.*

2. Plaintiff also alleges that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* with respect to her termination from employment. As a result, Plaintiff has suffered damages as set forth herein.

3. Plaintiff is a former employee of Defendant where she worked as an Early Literacy Specialist. During the course of her employment, Plaintiff, and upon information and

belief, all other similarly-situated Early Literacy Specialists were classified by Defendant as "exempt" from the overtime requirements of the FLSA and PMWA and were supposed to be compensated on a salary basis.

4. However, Defendant maintained an "actual policy and practice" of making unlawful deductions under the FLSA, whereby Plaintiff, and, upon information and belief, all other similarly-situated Early Literacy Specialists, were and are docked pay for any unpaid time off, including a certain amount "per unpaid hour."

5. Due to Defendant's aforesaid unlawful payroll practices, Plaintiff, and, upon information and belief, other similarly-situated Early Literacy Specialists, were not compensated on a bona fide "salary basis" under the FLSA and PMWA.

6. As a result, Plaintiff, and upon information and belief, all other similarly-situated Early Literacy Specialists, are/were not eligible for the exemptions for executive, administrative, or professional employees under the FLSA and PMWA.

7. Plaintiff, and, upon information and belief, all other similarly-situated Early Literacy Specialists, were misclassified as exempt under the FLSA and PMWA, and thus were denied overtime compensation at a rate not less than 1.5 times their regular rate of pay for all hours worked over forty (40) in a workweek.

8. Plaintiff brings this action for monetary damages, declaratory and injunctive relief, and other equitable an ancillary relief, to seek redress for Defendant's willful, unlawful and improper conduct.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." See 29 U.S.C. § 216(b).

10. This action is also initiated pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

11. On or about February 23, 2017, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. §§ 2000e-5(b) and (e). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2017-01667 and was filed within one hundred and eighty (180) days of the unlawful employment practice.

12. By correspondence dated May 11, 2017, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

13. On or about August 4, 2017, within the statutory time frame applicable to her claims, Plaintiff filed the instant action.

14. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

15. This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as her federal law claims.

16. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as Defendant's principal places of business are located in this district, and the unlawful practices of which Plaintiff is complaining were committed in this district.

**PARTIES**

17. Paragraphs 1 through 16 are hereby incorporated by reference as though the same were fully set forth at length herein.

18. Plaintiff Janice Tehie is a citizen the United States with a current address of 1341 Valley Home Road, Morristown, TN 37813.

19. Defendant Children's Literacy Initiative is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an office address registered with the Pennsylvania Secretary of State of 1207 Chestnut Street, Suite 200, Philadelphia, PA 19107.  Upon information and belief, Defendant maintains a principal place of business at 2314 Market Street, Philadelphia, PA 19103.

20. Defendant is a "private employer" and covered by the FLSA.

21. Plaintiff is a previous employee of Defendant within the meaning of the FLSA, PMWA, and ADA, and, as such, is entitled to the protections of those statutes.

22. At all times relevant hereto, Defendant acted or failed to act through its agents, servants and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23. Paragraphs 1 through 22 are hereby incorporated by reference as though the same were fully set forth at length herein.

24. This action is brought as a collective action to recover unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties and damages owed to Plaintiff and all similarly situated current and former employees of Defendant.

25. Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiff brings this action individually and on behalf of all other similarly situated persons presently or formerly employed by Defendant in the position of Early Literacy Specialist who were subject to Defendant's unlawful pay practices and policies described herein and who worked for Defendant at any point

in the three years preceding the date the instant action was initiated (the members of the putative class are hereinafter referred to as the "Class Plaintiffs").

26. Plaintiff estimates that there are approximately fifty (50) Early Literacy Specialists who either were or are working for Defendant and were unlawfully denied overtime compensation for hours worked in excess of forty (40) in a workweek. The precise number of employees can be easily ascertained by Defendant. These employees can be identified and located using Defendant's payroll and personnel records. Potential Class Plaintiffs may be informed of the pendency of this Collective Action by direct mail and/or publication.

27. Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because all the class members are similarly situated. Plaintiff and other similarly situated employees were similarly not paid an overtime premium for hours worked in excess of forty (40) in a workweek, had the same job classification and job duties, and were subject to the same uniform policies, business practices, payroll practices, and operating procedures. Further, Defendant's willful policies and practices, which are discussed more fully in this Collective and Class Action Complaint, whereby Defendant failed to pay Class Plaintiffs an overtime premium for all hours worked over 40 hours in a workweek, have affected Plaintiff and Class Plaintiffs in the same fashion.

28. Plaintiff will request the Court to authorize notice to all current and former similarly situated employees employed by Defendant, informing them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid compensation, overtime compensation and liquidated damages under the FLSA.

## CLASS ACTION ALLEGATIONS

29. Paragraphs 1 through 28 are hereby incorporated by reference as though the same were fully set forth at length herein.

30. Plaintiff brings this action individually, and on behalf of the following state-wide class of similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons presently or formerly employed by Defendant Children's Literacy Initiative during the last three (3) years in the position of Early Literacy Specialist who were denied overtime compensation for work performed in excess of forty (40) hours in a workweek ("Class Plaintiffs").

31. The members of the class are so numerous that joinder of all members is impractical. Class members may be informed of the pendency of this Class Action by direct mail.

32. Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are questions of law and fact common to the Class, including, but not limited to:

    A. Whether Plaintiff and the Class are entitled to overtime compensation for services rendered in excess of forty (40) hours per week under the PMWA;

    B. Whether Plaintiff and the Class worked in excess of forty (40) hours per week;

    C. Whether Plaintiff and the Class have suffered and are entitled to damages, and if so, in what amount;

    D. Whether Defendant has and/or had an "actual practice" of making improper deductions from Plaintiff's and Class Plaintiffs' salary under the PMWA; and

    E. Whether Plaintiff and the Class were misclassified as "exempt" from overtime compensation under the PMWA.

6

33. Plaintiff's claims are typical of the claims of the Class members. Plaintiff is a former employee of Defendant who was employed in the position of Early Literacy Specialist who has suffered similar injuries as those suffered by the Class members as a result of Defendant's failure to pay wages and overtime compensation. Defendant's conduct of violating the PMWA has affected Plaintiff and the Class in the exact same way.

34. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is similarly situated to the Class and has no conflict with the Class members.

35. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in class action litigation.

36. Pursuant to Rules 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, this action is properly maintained as a class action because:

    A. The prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant;

    B. Defendant, by failing to pay overtime compensation when it became due and owing in violation of the PMWA, has acted or refused to act on grounds generally applicable to the Class, thereby making equitable relief appropriate with respect to the Class as a whole; and

    C. The common questions of law and fact set forth above applicable to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this case, especially with respect to considerations of consistency, economy, efficiency, fairness and equity, as compared to other available methods for the fair and efficient adjudication of the controversy.

37. A class action is also superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impractical. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually. Additionally, as the damages suffered by each Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for the Class members to bring individual claims. The presentation of separate actions by individual Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of each member of the Class to protect his or her interests.

**FACTUAL BACKGROUND**

38. Paragraphs 1 through 37 are hereby incorporated by reference as though the same were fully set forth at length herein.

39. Defendant was initially hired by Defendant as an Early Literacy Coach in early May 2016.

40. In August 2016, Plaintiff learned that she would be placed with Defendant School District of Philadelphia at the Stephen Decatur School located at 3500 Academy Road, Philadelphia, PA 19154.

41. During her employment with Defendant, Plaintiff performed her job well, receiving occasional praise for her work and no justifiable discipline.

## Facts Pertaining to the Collective/Class FLSA and PMWA Claims

42. Paragraphs 1 through 41 are hereby incorporated by reference as though the same were fully set forth at length herein.

43. When Plaintiff first began her employment with Defendant, the terms and conditions of her employment therewith were summarized in a document entitled "Early Literacy Specialist Work Agreement" ("ELS Work Agreement").

44. Upon information and belief, all other similarly-situated Early Literacy Specialists employed by Defendant received an ELS Work Agreement which set forth effectively the same terms and conditions of employment.

45. Pursuant to the ELS Work Agreement, Plaintiff was to receive an annualized salary of $60,000 for 225 contracted days of work.

46. Pursuant to the ELS Work Agreement, Plaintiff, and upon information and belief, all other similarly situated Early Literacy Specialists employed by Defendant, were subject to deductions from their pay for any unpaid time off (i.e. time off from work in excess of available PTO).

47. In this regard, the ELS Work Agreement provides: "Should you take any unpaid time off during this Work Agreement, your salary will be deducted by $266.67 per unpaid day ($38.09 per unpaid hour)."

48. The pay deduction policy of Defendant articulated in the ELS Work Agreement constitutes a "clear and particularized policy" which effectively communicates that deductions will be made in specific circumstances disallowed under the FLSA and PMWA, including for absences shorter than one full day.

49. An employer is not entitled to claim any exemption under the FLSA or PMWA requiring the payment of compensation on a salary basis if said employer has an "actual practice" of making improper deductions from salary.

50. Upon information and belief, in addition to maintaining the "clear and particularized policy" of unlawful deductions described above, Defendant did in fact make such deductions from the pay of Plaintiff and other similarly-situated Early Literacy Specialists.

51. Although Plaintiff's scheduled hours of work were nominally 8:30 am to 4:00 pm, Monday through Friday, Plaintiff was often required to work past the end of her scheduled shift, and often to perform work from home.

52. During a normal workweek, Plaintiff typically performed an additional ten (10) hours of work in addition to her scheduled thirty-five (35) hour shift. Accordingly, Plaintiff typically worked, on average, approximately forty-five (45) hours per week.

53. By way of example, during the week of October 30, 2016 to November 3, 2016, Plaintiff performed approximately twelve (12) additional hours of work for Defendant in excess of her normal thirty-five (35) hour shift, for a total of seven (7) hours of overtime for which she received no compensation.

54. Despite working, on average, at least five (5) hours of overtime per week, Plaintiff did not receive any overtime compensation.

55. Plaintiff, and upon information and belief, other similarly-situated Early Literacy Specialists employed by Defendant, regularly worked in excess of forty (40) hours per week.

56. In this regard, Plaintiff, and, upon information and belief, other similarly-situated Early Literacy Specialists employed by Defendant were forced to prepare for conferences and

lessons, including lesson planning, and to perform research outside of their nominally scheduled hours, in order to comply with Defendant's expectations.

57. Defendant had knowledge that Plaintiff, and, upon information and belief, other similarly-situated ELSs were performing work beyond their scheduled shift.

58. Indeed, Plaintiff had informed Donna Sharp ("Ms. Sharp"), her supervisor with CLI, that she had been instructed by the principal of her placement school that she was not to write lesson plans during school hours, and that she was thus being forced to work from home.

59. As a result of Defendant's actual practice of making unlawful pay deductions under the FLSA and PMWA, Plaintiff and Class Plaintiffs were not compensated on a bona fide salary basis.

60. Accordingly, Plaintiffs and Class Plaintiffs did/do not qualify for the exemption for executive, administrative, or professional employees under the FLSA/PMWA.

61. Plaintiff, and, upon information and belief, Class Plaintiffs did/do not have the authority to hire, fire, or discipline other employees of Defendant, nor did/do they make recommendations with respect to employee status changes to which Defendant lends substantial weight.

62. As a result, Plaintiff and Class Plaintiffs did/do not satisfy the duties requirements for the exemption for executive employees under the FLSA/PMWA.

63. Plaintiffs and Class Plaintiffs did/do not perform work directly related to Defendant's management or general business operations, nor did/do they exercise discretion or independent judgment regarding matters of significance to Defendant.

64. Accordingly, Plaintiffs and Class Plaintiffs did/do not meet the duties requirements for the exemption for administrative employees under the FLSA/PMWA.

65. Plaintiff's and Class Plaintiffs' primary job duty was not teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge, nor were Plaintiff or Class Plaintiffs employed and engaged in the activity of imparting knowledge as a teacher in an educational establishment by which they were employed.

66. Rather, Plaintiff's and Class Plaintiffs' primary job duty was to provide professional development and consulting services to teachers within Defendant's client schools, including the provision of counseling to teachers regarding literacy instruction, and the generation and review of student data.

67. Accordingly, Plaintiff and Class Plaintiffs did/do not qualify for the exemption for bona fide teachers under the FLSA or PMWA.

68. Finally, there are no other exemptions under the FLSA and/or PMWA which could arguably be applicable to Plaintiff or Class Plaintiffs.

69. Plaintiff and Class Plaintiffs are/were, within the meaning of the FLSA and PMWA, non-exempt employees of Defendant and therefore entitled to overtime compensation for all hours they worked over forty (40) in a workweek.

70. As a result of Defendant's aforesaid illegal actions, Plaintiff and Class Plaintiffs have suffered damages.

**Facts Pertaining to Plaintiff's Individual Allegations under the ADA**

71. Paragraphs 1 through 70 are hereby incorporated by reference as though the same were fully set forth at length herein.

72. Plaintiff has suffered from recurrent back pain for years.

73. On or around May 31, 2016, Plaintiff was diagnosed with a slipped lumbar vertebra, which was causing her increasingly severe and debilitating back pain.

74. Plaintiff's doctor informed her that she would need to undergo spinal fusion surgery in order to improve her quality of life and prevent her from becoming so disabled that she would no longer be able to report to work.

75. Plaintiff promptly informed Megan Wherrity ("Ms. Wherrity"), Human Resources Manager for CLI, of her disability and need for surgery.

76. Ms. Wherrity responded to Plaintiff's revelation of her disability with some hostility, asking Plaintiff, "Well, does this mean that you won't be able to walk down the hall?"

77. Plaintiff responded that she would be able to perform her job with some accommodations, including no heavy lifting.

78. Due to Plaintiff's surgery and recovery period, Plaintiff was forced to wear a back brace for six (6) weeks and was unable to attend CLI's Summer Institute.

79. Although the Summer Institute is voluntary, CLI's Early Literacy Coaches are encouraged to attend in order to meet the principals and teachers of the schools to which they are assigned.

80. Although Genevieve Endy-O'Kane ("Principal O'Kane") was somewhat abrupt with Plaintiff when she notified her that she would not be able to attend the Summer Institute due to her recovery from surgery, Plaintiff's supervisor at CLI assured her that it was okay that she would not be able to attend the voluntary Summer Institute as a result of her recovery from back surgery.

81. However, from the beginning of Plaintiff's placement with her school, Plaintiff noticed that Principal O'Kane did not seem pleased with her presence. In this regard, Principal O'Kane failed to properly introduce Plaintiff to staff, frequently paged her on the intercom while

mispronouncing her name and declining to address her as "Dr. Tehie," despite her degree in education, and refused to provide her office space.

82. In or around late October 2016, Plaintiff shared her concerns regarding Principal O'Kane with Ms. Sharp, notifying Defendant that she felt Principal O'Kane was unhappy with her due to her slow recovery from back surgery, which resulted in her absence at the CLI Summer Institute

83. Ms. Sharp's only response to Plaintiff's concerns was to tell Plaintiff, "We'll work it out."

84. On November 11, 2016, Principal O'Kane called Plaintiff into her office for an impromptu meeting at the end of the day.

85. During this meeting, Principal O'Kane advised Plaintiff that "it [Plaintiff's employment with the school] was just not working out," and suggested that the school needed someone who "would eat, breath, and live CLI and its methods."

86. Principal O'Kane stated to Plaintiff, "I can't have you back here. It's causing too much turmoil."

87. Plaintiff responded that if Principal O'Kane felt that way, the school could ask CLI to provide them with another Early Literacy Coach, and that Plaintiff would contact CLI about being transferred to another school.

88. Principal O'Kane agreed with this suggestion, leading Plaintiff to believe that Principal O'Kane had made the decision to terminate Plaintiff's employment pending the acquisition of a new Early Literacy Coach.

89. Regarding Plaintiff's chances with obtaining employment with another school, Principal O'Kane stated that Plaintiff would be "treated as a goddess" in a school "where they didn't know any better."

90. In explanation for these harsh words, Principal O'Kane stated, "Our first indication that this was not going to work was when you weren't at the summer services [i.e. the CLI Summer Institute]. Our teachers and myself were all gung-ho about meeting our new literacy specialist, and you were in the hospital having back surgery. That should have been our first indication that this was not going to work, and we should have asked for someone else."

91. Plaintiff was very upset by Principal O'Kane's statement and reasonably understood this exchange to mean that Principal O'Kane was seeking her resignation in lieu of termination.

92. Plaintiff promptly reported this exchange to Ms. Sharp, advising Defendant of Principal O'Kane's discriminatory comments regarding her disability, back surgery, and continued employment with the school.

93. Plaintiff told Ms. Sharp that she believed Principal O'Kane was trying to terminate her or force her to resign largely because of her health condition.

94. When Plaintiff asked Ms. Sharp whether CLI would be able to place her with a different school, in light of Principal O'Kane's intentions to have her removed, Ms. Sharp said that she doubted it.

95. Ms. Wherrity subsequently confirmed Ms. Sharp's doubts, stating that there was "no provision" for Plaintiff to be transferred to another school.

96. Neither Ms. Sharp nor Ms. Wherrity offered to take any remedial action on Plaintiff's behalf with Principal O'Kane in attempt to remedy this harassment or prevent her removal.

97. Feeling as though she had no other option as a result of this hostile work environment, Plaintiff submitted her letter of resignation effective November 18, 2016.

98. Plaintiff was constructively discharged from her employment with CLI.

99. Plaintiff's slipped vertebrae and associated back pain constitutes a physical impairment within the meaning of the ADA in that they constitute a physical impairment which substantially limits Plaintiff in one or more major life activities, including, but not limited to, walking, manual labor, lifting, squatting, and/or standing.

100. It is believed and therefore averred that Defendant discriminated against and ultimately constructively terminated Plaintiff's employment because of her disability, her past record of impairment, and/or because Defendant regarded her as being disabled in violation of the ADA.

101. Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, struggled to obtain other employment and has been and will be forced to expend significant amounts of money on health insurance premium payments.

102. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

## COUNT I
## FAIR LABOR STANDARDS ACT
## 29 U.S.C § 201, *et seq.*
## <u>FAILURE TO PAY OVERTIME COMPENSATION</u>

103.  Paragraphs 1 through 102 are hereby incorporated by reference as though the same were full set forth at length herein.

104.  Pursuant to Section 206(b) of the FLSA, employees must be compensated for every hour worked in a workweek.

105.  Moreover, under Section 207(a)(1) of the FLSA, employees must be paid overtime equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week.

106.  Defendant had and maintained an actual practice of making unlawful deductions from the salary of Plaintiff and Class Plaintiffs in violation of the FLSA.  As a result, Defendant was not entitled to claim the executive, administrative, or professional exemptions from overtime in order to avoid paying overtime to Plaintiff and Class Plaintiffs.

107.  As a result, Defendant failed to pay Plaintiff and Class Plaintiffs overtime compensation for all hours worked over forty (40) in a workweek at 1.5 times their regular rate of pay.

108.  The foregoing actions of Defendant and the policies and practices of Defendant violate the FLSA.

109.  Defendant's actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

110.  Defendant is liable to Plaintiff and Class Plaintiffs for actual damages, liquidated damages, and other equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses.